UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD BRIMS,

                        Petitioner,

        v.

J. COLLADO, SUPT.,

                        Respondent.

No. 18-CV-6973 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

Appearances:

Edward Brims
Walkill, NY
*Pro Se Petitioner*

Lisa E. Fleischmann, Esq.
Kaufman Borgeest & Ryan LLP
Valhalla, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Edward Brims ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of Habeas

Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, challenging his January 27, 2012

conviction, following a jury trial in New York State Supreme Court, Rockland County ("County

Court"), for two counts of Attempted Robbery in the First Degree, one count of Attempted

Robbery in the Second Degree, one count of Assault in the Second Degree, and one count of

Criminal Possession of a Weapon in the Second Degree.  (*See generally* Pet. for Writ of Habeas

Corpus ("Pet.") (Dkt. No. 1).)

On August 14, 2018, the Court referred the Petition to Magistrate Judge Paul E. Davison. (Dkt. No. 7.)  In a Report and Recommendation ("R&R") dated March 4, 2022, Judge Davison recommended that the Petition be denied in its entirety.  (*See* Report & Recommendation ("R&R") 1 (Dkt. No. 48).)  Petitioner filed Objections to the R&R on March 29, 2022 and May 5, 2022, after seeking and receiving an extension of time to object.  (*See* Pet'r's Obj's to R&R ("First Obj's") (Dkt. No. 50) and Pet'r's Obj's to R&R (Second Obj's)( Dkt. No. 52).) Respondent has not responded to the Objections.  After a review of the R&R and Petitioner's Objections, the Court adopts the result recommended in the R&R and denies the Petition.

## I.  BACKGROUND[1]

The factual and procedural background of this case is set forth in the thorough R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 1–27; Resp't's Mem. of Law in Opp'n to Pet. ("Resp't's Opp'n") 7–16 (Dkt. No. 16-1).)  The Court nevertheless summarizes the relevant facts.

On October 12, 2010, Petitioner entered a convenience store in Spring Valley, New York, armed with a black and silver pistol, with a hood over his head and a white mesh hairnet covering his face.  (R&R 2; Resp't's Opp'n 9–10.)  The store owner, Rizwan Zafar ("Zafar"), was seated behind the counter.  (R&R 2; Resp't's Opp'n 10.)  Petitioner pulled out the gun and demanded money.  (*Id.*)  When Zafar did not respond, Petitioner, still pointing the gun, walked around the counter while ordering Zafar not to move.  (*Id.*)  Zafar then heard a "click" from the gun, which he believed was Petitioner attempting to fire the gun when it jammed.  (*Id.*)  Zafar

---

[1] The record in this case is voluminous because Petitioner has actively and vigorously litigated his conviction in a number of different fora.  The Court has limited its summary of the underlying events and later proceedings to only those that are relevant for understanding Petitioner's case and addressing his objections to Judge Davison's findings in the R&R.

rushed Petitioner, and the two men fought.  (*Id*.)  During the altercation, Zafar knocked away Petitioner's gun and pulled the hairnet from his face.  (*Id.*)  After battering Zafar repeatedly, Petitioner managed to recover his gun, and Zafar ducked behind the counter and grabbed a hammer, at which point Petitioner fled.  (*Id*.)  The entire incident was recorded on the store's surveillance system.  (R&R 2; Resp't's Opp'n 11.)

Zafar called the Ramapo Police Department immediately after the incident.  (R&R 2; Resp't's Opp'n 10.)  When officers arrived, he provided a physical description of Petitioner and stated that Petitioner was carrying a silver and dark-colored pistol.  (R&R 2; Resp't's Opp'n 11.) The officers and Zafar then drove around the area searching for Petitioner but returned to the store after they failed to locate him.  (*Id*.)  At that time, Zafar pointed out the white hairnet Petitioner had been wearing, which was lying just outside of his store.  (R&R 3; Resp't's Opp'n 11.)

On November 9, 2010, a New York State Police forensic scientist took four swabs from the hairnet and used them to create a DNA profile.  (R&R 3; Resp't's Opp'n 12.)  Officers entered the information from the DNA profile into the New York State DNA Databank, which produced a New York State Convicted Offender Lab Report matching Petitioner.  (*Id.*)  Officers also learned that Petitioner had been seen driving a white 2000 Lincoln Continental bearing a certain license plate number.  (*Id.*)

On December 16, 2010, the Rockland County Police spotted Petitioner's vehicle, which they identified by its license plate, being driven by a male matching Petitioner's description. (R&R 3; Resp't's Opp'n 12.)  When officers tried to stop Petitioner, he suddenly drove away, starting a high-speed chase that eventually included five to ten police vehicles in pursuit and that

only ended after Petitioner crashed his car into a telephone utility box.  (R&R 3; Resp't's Opp'n 13.)  Petitioner was placed under arrest.  (*Id.*)

Officers then retraced the chase route and located a silver and black handgun that matched the gun seen in surveillance footage of the attempted robbery and that had scratches and gouge marks on one side consistent with it being thrown from a car.  (R&R 4; Resp't's Opp'n 13–14.)  The next day, officers also searched Petitioner's apartment and recovered two white hairnets that were similar in style and appearance to that located at Zafar's store.  (R&R 4; Resp't's Opp'n at 14–15.)  Later, in March 2011, the Rockland County District Attorney's Office received the County Court's approval to take a DNA buccal swab from Petitioner.  (R&R 4; Resp't's Opp'n at 15.)  After taking the swab from Petitioner, a New York state forensic scientist confirmed that the DNA from the swab matched DNA found on the trigger, grip, barrel, and magazine of the gun.  (*Id.*)  The New York State Police also confirmed that the recovered gun was operable and ready to fire at the time it was recovered.  (*Id.*)

As relevant to the instant petition, a felony complaint was filed charging Petitioner with two counts of Attempted Robbery in the First Degree, one count of Attempted Robbery in the Second Degree, one count of Assault in the Second Degree, and one count of Criminal Possession of a Weapon in the Third Degree on December 17, 2010.  (*See* Dkt. No. 16-2 at 103–4.)  On December 22, 2010, Petitioner had his initial grand jury presentment; the indictment (No. 07/2011) included all charges in the felony complaint except Criminal Possession of a Weapon in the Third Degree.  (*See* Dkt. No. 16-4 at 45–48.)  The prosecution later moved to file a charge of Criminal Possession of a Weapon in the Second Degree on July 7, 2011; the County Court granted this motion on July 20, 2011.  (*See* Dkt. No. 16-3 at 25.)  The Prosecution filed a second indictment (No. 342/2011), and Petitioner's grand jury presentment for this indictment took

4

place on July 29, 2011.  (*See* Dkt. No. 16-6 at 2.)  The Prosecution then moved to consolidate the second indictment with the first, and the County Court granted this motion on August 26, 2011.  (*Id.* at 4–7.)

Petitioner was arraigned on January 10, 2011 in the County Court.  (*See generally* Dkt. 17-6.)  An attorney, Martin Gotkin ("Mr. Gotkin"), appeared with Petitioner as his legal representative.  (*Id.*)  Petitioner pleaded not guilty.  (*Id.* at 3.)  During the hearing, the County Court discussed a pro se pre-trial motion Petitioner had filed and asked Petitioner if he intended to proceed pro se.  (*Id.* at 3–4.)  Petitioner stated on the record that he did wish to proceed pro se, and the court then discussed with Petitioner the potential ramifications of his decision and his responsibilities as a self-represented defendant.  (*Id.* at 8–13; 17–20; 24–26; 32–42.)  After this discussion and a further off-the-record conference between Petitioner and Mr. Gotkin, Petitioner again affirmed that he wished to proceed pro se, and the court found that he had knowingly and voluntarily waived his right to counsel.  (*Id.* at 49–50, 53–54.)  The County Court appointed Mr. Gotkin to provide Petitioner with legal assistance during the proceedings.  (*Id.* at 54.)

The County Court started jury selection on January 10, 2012.  (*See* Dkt. No. 17-1 at 232.)[2]  The County Court explained the jury selection procedure to Petitioner, and Mr. Gotkin stated that he had explained the procedure to Petitioner before the proceedings.  (*Id.* at 237–49.)  Jury selection continued on January 12, 2012.  (*See* Dkt. 17-1 at 331; Dkt. 17-2 at 115.)  The prosecution peremptorily challenged Juror No. 5, a white female; Juror No. 9, a white male; and

---

[2] Throughout jury selection, the trial, and sentencing, Petitioner had a legal advisor present.  (*See* Dkt. 17-1 at 232, 332; Dkt. 17-2 at 116, 223; Dkt. 17-3 at 2, 137; Dkt. 17-4 at 2, 129, 293.)

Juror No. 12, a black female.  (Dkt. 17-2 at 27.)[3]  Petitioner asked the court to identify Juror No.

12 and raised a *Batson* challenge to the prosecution's peremptory challenge to that juror.  (*Id.* at

28.)  In response to Petitioner's request, the court commented that "[o]rdinarily, [defendants]

have to show there was a pattern of strikes if [they] want to invoke a *Batson* challenge, however,

for the preservation of the Appellate record, I'll let [the prosecution] give a reason."  (*Id.*)  The

prosecution responded that "[Juror No. 12] spoke in a very thick accent . . . [t]his is a case that is

going to involve D.N.A. evidence which is not ridiculously complex, but could be difficult to

understand for people that [don't] speak English fluently and regularly."  (*Id.* at 28, 31.)  The

County Court then stated that there was "no pattern of invidious strikes exercised by the

[prosecution].  They exercised three preempts, two against white and one against female black.

[The prosecution] gave what I believed to be a sufficient reason [for the challenged strike].  The

neutral reason doesn't mean a reason that one side or the other agrees with. . . I don't find there

was any *Batson* violation involved."  (*Id.* at 31–32.)

Jury selection continued on January 13, 2012.  (*See* Dkt. 17-2 at 115.)  The prosecution

peremptorily challenged three potential jurors: Juror No. 1, an Asian male; Juror No. 3, a black

female; and Juror  No. 14, a white male.  (*Id.* at 168–69.)[4]  Petitioner raised a *Batson* objection as

to the prosecution's challenge to Juror No. 3.  (*Id.* at 169–71.)  Petitioner alleged that the

peremptory challenge was made on the basis of race, referring to the prosecution's earlier

challenge to Juror No. 12.  (*Id.* at 169–70.)  The Court requested that the prosecution give its

reasons for the peremptory challenge.  (*Id.* at 171.)  The prosecutor stated that he challenged Jury

---

[3] Neither Petitioner nor the prosecution issued challenges for cause.  (*See* Dkt. 17-2 at 27.)

[4] The prosecution did not challenge any juror for cause. (*Id.* at 164.)

No. 3 because "[she] walked in the back and said she had been railroaded by the police, she [was] arrested once, they didn't hear her side of the story.  Mr. Brims' entire defense from what he enlightened us to, is that it's going to be [that Mr. Brims was railroaded by the police]."  (*Id.* at 172.)  The County Court then stated "I . . .find that is a race neutral reason and deny the objection on the *Batson* grounds."  (*Id.*)

The trial commenced on January 17, 2012 and continued through January 26, 2012.  (*See* Dkt. 17-2 at 222; Dkt. 17-3 at 1,136; Dkt. 17-4 at 1, 128.)  On January 27, 2012, the jury returned a unanimous verdict of guilty on all charges: two counts of Attempted Robbery in the First Degree; one count of Attempted Robbery in the Second Degree; one count of Assault in the Second Degree; and one count of Criminal Possession of a Weapon in the Second Degree.  (*See* Dkt. 17-4 at 287–89.)  Petitioner appeared for sentencing on April 5, 2012.  (*Id.* at 293.)  The County Court sentenced Petitioner to a prison term of 18 years to life for attempted First Degree Attempted Robbery and Second Degree Criminal Possession charges, and 14 years to life on the Second Degree Attempted Robbery and Second Degree Assault charges.  (*Id.* at 307–08.)  The County Court ordered that the sentences would be served concurrently.  (*Id.* at 308.)

Petitioner filed his pro se 440.10 Motion on June 14, 2014.  (*See* Dkt 16-2 at 4–13.) Petitioner argued that he was constructively denied counsel; that the prosecution and the County Court had engaged in various forms of misconduct; and that he was actually innocent of the crimes based on newly discovered evidence  (*Id.*)  The People opposed the motion to vacate on August 15, 2014.  (*See* Dkt No. 28 at 64–69.)  The County Court denied the motion on September 15, 2014, primarily on the grounds that most of Petitioner's claims were matters of record for direct appeal.  (*See* Pet. at 39–41.)

On August 12, 2014, Petitioner, through counsel, appealed his conviction to the Second Department.  (*See* Dkt 16-2 at 124–71.)  As relevant to the instant Petition, the brief raised, among others, the following claims: the County Court erred in denying Petitioner s *Batson* objection as to prospective Juror No. 3 and the County Court erred by allowing Petitioner to represent himself at trial.  (*Id*.)  The state submitted its brief in opposition on January 26, 2015.  (*See* Dkt. 16-2 at 177.)  On March 6, 2016, Petitioner filed a pro se supplemental brief that raised six additional grounds that his counsel had not raised in the original brief.  (*See* Dkt. 16-3 at 11–69.)  As relevant to the instant petition, these grounds included that Petitioner was deprived of his right to counsel because he was not assigned an attorney until the morning of the grand jury proceeding and that he did not knowingly or intelligently waive his right to counsel or immunity at his second grand jury presentation.  (*Id*.)  The Second Department considered both the brief submitted by Petitioner's appellate counsel, as well as Petitioner's pro se filing, and affirmed the judgment.  *See People v. Brims*, 45 N.Y.S.3d 488, 489–91 (App. Div. 2016).  As relevant to the instant petition, the Second Department held that the County Court properly denied Petitioner's *Batson* challenges because the prosecutor had "offered race-neutral reasons for exercising the peremptory challenges, and there was no basis in the record to conclude that those reasons were pretextual."  *Id*. at 490.  The Second Department also found that Petitioner had made a "knowing, voluntary, and intelligent decision to waive his right to counsel and proceed pro se."  *Id.*

On March 7, 2017, Petitioner's appellate counsel sought leave to appeal the Second Department's decision before the New York Court of Appeals. (Pet. at 19.)  By decision dated May 7, 2015, the Court of Appeals summarily denied Petitioner's request.  *See People v. Brims*, 34 N.E.3d 372 (N.Y. 2015).

On August 20, 2017, Petitioner, pro se, filed a motion for a Writ of Error Coram Nobis with the Second Department.  (*See* Dkt. 16-4 at 33–128.)  Petitioner claimed he received ineffective assistance of appellate counsel because his attorney failed to argue, as relevant to the instant petition, that Petitioner was deprived of his right to counsel that re-attached upon the state's motion to consolidate the second indictment.  On November 28, 2017, the state submitted its opposition.  (Dkt. No. 16-10 at 3–8.)  By decision and order dated January 24, 2018, the Second Department denied the motion on the basis that Petitioner had failed to establish ineffective assistance of appellate counsel and did not address Petitioner's remaining claims.  *People v. Brims*, 67 N.Y.S.3d 498 (App. Div. 2018).

The Petition was received by the Clerk's Office and filed on August 2, 2018.  (Pet. at 16.)  Respondent filed a Memorandum of Law opposing the Petition on December 21, 2018.  (*See* Resp't's Opp'n.)  Petitioner filed a response in reply (the "Traverse") on April 19, 2019.  (*See* Pet'r's Traverse in Reply to State's Opp'n ("Pet'r's Traverse") (Dkt. No. 28).)  Judge Davison issued the R&R on January 29, 2021, recommending that this Court deny Petitioner's request for relief and dismiss the Petition in its entirety.  (*See* R&R.)  Petitioner subsequently filed his timely Objections.  (*See* First Obj's; Second Obj's.)

## II.  DISCUSSION

### A.  Applicable Law

#### 1.  Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation.  The objections must be "specific" and "written," FED. R. CIV. P. 72(b)(2), and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* FED. R. CIV. P. 6(d), for a total of

seventeen days, *see* FED. R. CIV. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner

has done here, the Court reviews de novo the parts of the report and recommendation to which

the party objected.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  The district court "may

adopt those portions of the . . . report [and recommendation] to which no 'specific written

objection' is made, as long as the factual and legal bases supporting the findings and conclusions

set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng.*

*Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting FED. R. CIV. P.

72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those

drafted by attorneys.  *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in

the formal litigation context, pro se litigants are held to a lesser standard than other parties."

(italics omitted)).  Because Petitioner is proceeding pro se, the Court construes his pleadings "to

raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted).  However, this "does

not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive

law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

2.  Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a).  "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner."  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  A decision is "an unreasonable application of clearly established Federal law" if a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08 (alterations and quotation marks omitted).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.  And an

unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citations and quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*— we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct.  *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration and quotation marks omitted)).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3.  Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of AEDPA, *see* 28 U.S.C. § 2254.  Before the Court reviews the merits of a habeas corpus petition, the Court must determine whether Petitioner complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.

### a.  Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of limitations.  *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations is tolled if any state post-

13

conviction proceedings are pending after the conviction becomes final.  *See* 28 U.S.C.

§ 2254(d)(2).  The limitations period is also subject to equitable tolling, which is warranted only

when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently,

and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*,

No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original)

(quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b.  Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition

when the state court's decision rests upon a state-law ground that is independent of the federal

question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir.

2011) (quotation marks omitted).  A judgment is "independent" if the "last state court rendering

a judgment in the case clearly and expressly states that its judgment rests on a state procedural

bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted).  A procedural bar is

"adequate . . . if it is based on a rule that is firmly established and regularly followed by the state

in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted).

In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule

renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*,

534 U.S. 362, 376 (2002).

### c.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, thereby giving the State the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation

and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . . ").  To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement.  *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . . ").  First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations and quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same).  This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v.*

*Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employment constitutional analysis[;]
> (b) reliance on state cases employing constitutional analysis in like fact situations[;]
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted).  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted).  Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim."  *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim."  *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal."  *Galdamez*, 394 F.3d at 74.  If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods.  *See Klein*, 667

16

F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement"); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example, in New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. CRIM. PROC. LAW § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10.), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).  In addition, New York permits only one application for direct review.  *See Jiminez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . . ").  "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted.  *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and

quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the

reality that deeming an unpresented claim to be exhausted is "cold comfort").  A dismissal of a

habeas petition on such grounds is a "disposition . . . on the merits."  *Carvajal*, 633 F.3d at 104

(quotation marks omitted).  "An applicant seeking habeas relief may escape dismissal on the

merits of a procedurally defaulted claim only by demonstrating 'cause for the default and

prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted."

*Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004)

(holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a

petition for habeas corpus absent a showing of a cause and prejudice to excuse the default," or

showing that the petitioner "is actually innocent of the underlying offense").

 B.  Application

  Petitioner raised a number of arguments in his Petition: (1) the prosecution impermissibly

struck a prospective juror due to the juror's race; (2) the County Court erred in allowing

Petitioner to represent himself; (3) the County Court exhibited bias and should have recused

himself; (4) Petitioner's appellate counsel was ineffective; (5) the ruling on Petitioner's 440.10

motion seemed to indicate that issues were preserved, but the Second Department found that

such issues were not preserved; (6) the County Court erred in denying Petitioner's motion for a

speedy trial; and (7) the Second Department improperly denied review of Petitioner's claim that

he was denied counsel at critical stages.  (Pet. 6–18.)[5]  Judge Davison rejected all of these

claims.  (*See* R&R 32–47.)

---

  [5] As Judge Davison noted in the R&R, Petitioner's Traverse could be construed to raise
additional arguments.  (*See* R&R 32 n.1.)  However, the Court agrees with Judge Davison that
these arguments should not be considered.  *See Parker v. Smith*, 858 F.Supp.2d 229, 233 n.2
(N.D.N.Y. 2012) ("To the extent that petitioner's traverse could be read to raise new arguments

In his Objections, Petitioner appears to raise two challenges to Judge Davison's rejection of his claims: (1) Petitioner's *Batson* claim was improperly rejected because Judge Davison failed to address all of the relevant evidence and (2) Petitioner's right to counsel at trial was violated because he never waived counsel for his second indictment.  (*See generally* First Obj's; Second Obj's.)[6]  The Court will address these contentions in turn.

---

that are not in his petition, they will not be considered because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief."); *Voymas v. Unger*, No. 10-CV-6045, 2011 WL 2670023, at *13 (W.D.N.Y. July 7, 2011) ("[H]abeas claims raised for the first time in a reply memorandum or traverse are not properly considered.").

[6] Petitioner raises several additional objections that the Court briefly recounts here and rejects as meritless.

Petitioner objects to Judge Davison's determination that certain of Petitioner's claims in his § 440.10 motion are procedurally barred.  (*See* Second Obj's 12; R&R 36–37.)  Petitioner appears to argue that the Second Department's denial of his § 440.10 motion was an "exorbitant application of a general state procedural rule" and the Court should not deem his claims there procedurally barred.  (Second Obj's 12.)  *See also Kemna*, 534 U.S. at 376 (explaining that in "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question").  Judge Davison has recounted Petitioner's repeated attempts to have his § 440.10 motion reheard and affirmed that the procedural bar should apply.  (*See* R&R 20, 44–45.)  Based on its review of the record, the Court agrees with Judge Davison that Petitioner's claims should be procedurally barred.  The denial of Petitioner's numerous requests for rehearing was not exceptional, given that the majority of Petitioner's claims could not form the basis for a motion to vacate judgment.  (*See* Pet. at 39–41.)

Petitioner next objects that "contrary to [the] R&R (p.37) petitioner did raise 'actual innocence'. . ." in his § 440.10 motion.  (Second Obj's 12) (emphasis omitted).  Petitioner appears to be arguing that Judge Davison should have considered his "actual innocence" objections in determining whether the procedural bar applied to the claims raised in his § 440.10 motion.  The Court finds that Petitioner's objection is misplaced, as Judge Davison conducted the correct analysis to determine whether the procedural bar applied by confirming that Petitioner had not raised actual innocence in his *Petition*.  (*See* R&R 37.)  *See also Carvajal*, 633 F.3d at 104 (2d Cir. 2011) ("An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim . . . by showing that he is actually innocent of the crime for which he was convicted.") (quotation marks and citation omitted).

Petitioner also objects that Judge Davison erred in applying the ineffective assistance of counsel standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) to Petitioner's claims concerning his appellate counsel's performance and communication.  (*See* Second Obj's

1. *Batson* Claim

Petitioner argues that Judge Davison's analysis of his *Batson* claim failed to address that

the state court violated federal law by requiring Petitioner to establish a "pattern of invidious

[jury] strikes" prior to hearing his *Batson* claim.  (First Obj's at 2; Second Obj's at 2–5.)[7]

To determine whether the prosecution's use of a preemptory strike violates equal

protection, a court must employ a three-step procedure:

> First, the defendant must make out a prima facie case by showing that the totality of the
> relevant facts gives rise to an inference of discriminatory purpose.  Second, once the
> defendant has made out a prima facie case, the burden shifts to the State to explain
> adequately the racial exclusion by offering permissible race-neutral justifications for the
> strikes. Third, if a race-neutral explanation is tendered, the [County Court] must then
> decide whether the opponent of the strike has proved purposeful racial discrimination.

*Johnson v. California*, 545 U.S. 162, 168 (2005) (citations, quotation marks, and alterations

omitted).  A defendant raising a *Batson* challenge is not required to demonstrate any specific

---

11.)  On review, the Court finds that Judge Davison applied the correct standard and agrees with
his determination.  (*See* R&R 42–44.)

    Finally, Petitioner puts forward several decontextualized citations from the record and
asserts that Judge Davison erred in relying on the County Court's findings of fact.  (Second
Obj's 5–7.)  Petitioner appears to argue that he is providing "clear and convincing evidence," as
required by 28 U.S.C. § 2254(e)(1) to undermine the presumption of the reliability granted to the
County Court's findings.  However, the Court, based on its own review of the record, finds that
Judge Davison properly relied on the County Court's factual findings in reaching his decision, as
Petitioner did not come close to providing "clear and convincing evidence" that would suggest
that the County Court's factual findings were wanting. *See Cotto*, 331 F.3d at 233.

    [7] Petitioner also alleges that the trial judge "cross[ed] the *Batson* line" when he
commented with respect to a potential juror that "[her accent] sounded like a Haitian accent."
(Second Obj's 9; Dkt. 17-2 at 169.)  Petitioner's objection here is unclear, but the Court will
interpret it as an allegation that the trial judge was engaging in invidious discrimination during
jury selection.  A review of the record indicates that the trial judge's comment was in response to
Petitioner's mention of a prospective juror who Petitioner identified as Haitian American; the
trial judge appears to have been agreeing with Petitioner that the prospective juror was likely a
Haitian American based on her accent. (*See* Dkt. 17-2 at 169.) As such, the Court holds that
Petitioner's objection is without merit.

pattern or track record of prosecutorial behavior to make out a prima facie case, so long as she "produc[es] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id.* at 170.  However, defendants often do cite a pattern of jury strikes to satisfy their burden to make out a prima facie case of discrimination.  *See Sorto v. Herbert*, 497 F.3d 163, 171 (2d Cir. 2007); *see also Jones v. West*, 555 F.3d 90, 96–97 (2d Cir. 2009) (noting that the trial court is to take into account "all relevant circumstances," which could include "a pattern of strikes against" a certain category of jurors) (citing *Batson*, 476 U.S. at 96) (quotation marks omitted).

The Court has reviewed the record and finds that Petitioner's claim is without merit. The County Court appears to have potentially been confused about the appropriate standard for making out a prima facie case of discrimination under *Batson* based on his statement at trial that, "[o]rdinarily, [defendants] have to show there was a pattern of strikes if [they] want to invoke a *Batson* challenge."  (Dkt 17-2 at 28.)  However, the County Court made this statement in passing and went on to require the prosecution to provide a reason for each of the strikes to which Petitioner objected.  In both cases, the prosecution provided reasons, and the County Court found on the record that these reasons were race neutral and not pre-textual.  (*See* Dkt. 17-2 at 31–32, 169–72.)  This is enough on its own to reject Petitioner's contention that the County Court required Petitioner to establish a "pattern of invidious strikes" prior to raising his *Batson* challenge.  *See Hodge v. Strange*, 2005 WL 1018426, at *6 (D. Conn. 2005) ("Though the judge's language was not always perfectly explicit or precise, in every case he either made a finding that the prosecutor did not have a discriminatory intent or a finding that the reasons given by the prosecutor were not pretextual."); *see also DeBerry v. Portuondo*, 277 F.Supp.2d 150, 159–60 (E.D.N.Y. 2003) ("[N]o controlling Supreme Court precedent requires the trial judge's

adjudication [of a *Batson* challenge] to take any particular form or include any magic words.") (quotation marks).  In addition to the fact that the trial judge ultimately made the finding he needed, which was whether Petitioner had proven discrimination, the Court notes that this finding is due deference in this context and that Petitioner has not overcome the presumption of correctness that is part of that deference.  *See Galarza v. Keane*, 252 F.3d 630, 639 (2d Cir. 2001) ("The trial court explicitly credited the prosecutor's race-neutral explanation for striking [two jurors], namely that they had problems understanding.  Because the trial court's factual findings regarding these two individuals are entitled to a presumption of correctness, . . . and are supported by the record, we agree with the district court's determination that Galarza's *Batson* claims . . . are without merit."); *see also Rosario v. Ercole*, 582 F. Supp. 2d 541, 554 (S.D.N.Y. 2008), *aff'd*, 601 F.3d 118 (2d Cir. 2010) ("A *Batson* challenge brought via habeas petition must defeat the "presumption of correctness" afforded to the trial court's first-hand observation of the events in voir dire.") (quoting *Galarza*, 252 F.3d at 635); *DeVorce v. Philips*, No. 04-CV-6155, 2013 WL 4406008, at *15 (S.D.N.Y. Aug. 7, 2013), *aff'd*, 603 F. App'x 45 (2d Cir. 2015) (noting that when examining the adjudication of a *Batson* challenge "a reviewing habeas court '. . . should give [the trial court's credibility] findings great deference.'") (quoting *Batson*, 476 U.S. at 98 n.21.

Petitioner is thus not entitled to habeas relief on his *Batson* claim, and Judge Davison's recommendation on this point is adopted.

### 2.  Right to Counsel

Petitioner also argues that Judge Davison failed to address his contention that his right to counsel had been violated because "Petitioner never waived his right to counsel for [his second indictment for] Criminal Possession of a Weapon."  (First Obj's 3–4; Second Obj's 10.)

Petitioner acknowledges that he waived his right to counsel for the first indictment, but he claims that waiver was "offense specific" and so not effective for the second indictment.  (First Obj's 3–4.)  Petitioner did not raise this claim in his Petition.  (*See generally* Pet.)[8]  Construing his direct appeal liberally, Petitioner did claim that he "could not knowingly and intelligently waive his right to counsel. . . at his second grand jury presentation . . ." (*See* Dkt. 16-3 at 60.)[9]  In its decision, the Second Department held that Petitioner had made a "knowing, voluntary, and intelligent decision to waive his right to counsel."  *Brims*, 45 N.Y.S.3d at 490.  Thus, Petitioner's claim was properly exhausted when the Court of Appeals affirmed the Second Department's decision.  *See Brims*, 84 N.E.3d at 970.

A criminal defendant has a Constitutional right to represent him or herself.  *See United States v. Garrett*, 42 F.4th 114, 118 (2d Cir. 2022).  However, because "proceed[ing] pro se . . . 'relinquishes ... many of the traditional benefits associated with the right to counsel [. . .]' [a defendant] must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).  While a trial court must discuss the decision with the defendant, no "particular talismanic procedures" are required, so long as the record "establish[es] that a defendant knew what he was doing and his choice was made with eyes open."  *U.S. v. Hurtado*, 47 F.3d 577, 583 (2d Cir. 1995) (citations and alterations omitted).

---

[8] The Court notes that Petitioner did raise a related claim in his Petition that the trial judge did not "warn defendant that he would have to represent himself on any future indictment." (Pet. 8.)  Judge Davison found that Petitioner had not exhausted this claim on direct review and determined that the claim should be deemed exhausted but procedurally barred.  (*See* R&R 36.) The Court finds that the record supports Judge Davison's determination.

[9] The Court notes that it is being *extremely* liberal in its construction of Petitioner's claim on his direct appeal, as his objection in his entirety was that, while he did waive his right to counsel at his second grand jury presentment, his waiver was not valid because he was unrepresented by counsel.  (*See* Dkt. 16-3 at 60.)

Once knowingly and intelligently made, "[a] defendant's choice to represent himself 'must be honored,' 'although he may conduct his own defense ultimately to his own detriment.'" *Garrett*, 42 F.4th at 120 (2d Cir. 2022) (quoting *Faretta*, 422 U.S. at 834).

As an initial matter, the Court finds that Petitioner has not presented evidence that the County Court unreasonably applied clearly established federal law in its determination that Petitioner knowingly and voluntarily waived his right to counsel.  When Petitioner stated that he desired to proceed pro se, the County Court engaged in a colloquy with Petitioner describing what responsibilities Petitioner would have and also repeatedly noting that Petitioner would be foregoing the benefit of his appointed counsel's legal expertise.  (*See* Dkt. 17-6 at 8–13; 17–20; 33–42; R&R 37–39.)  Additionally, before granting Petitioner's request, the County Court directed Petitioner to discuss his decision with appointed counsel off the record.  (*Id.* at 49–50.) This process was not an unreasonable application of clearly established federal law and was sufficient to confirm that Petitioner was knowingly and voluntarily waiving his right to counsel. *See Carpenter v. Conway*, No. 07-CV-3602, 2011 WL 795860, at *7 (E.D.N.Y. Feb. 25, 2011) (holding that trial court did not unreasonably apply clearly established federal law where the trial court asked petitioner, among other things, if he knew how to cross-examine witnesses or what motions to file; described petitioner's responsibilities in proceeding pro se; and repeatedly recommended that petitioner should proceed with appointed counsel); *Allison v. Khahaifa*, No. 10-CV-3453, 2011 WL 3298876, at *15 (E.D.N.Y. Aug. 1, 2011) (holding that petitioner knowingly waived his right to counsel where trial court had emphasized appointed counsel's experience and expertise and explained to petitioner the risks of self-representation).

Additionally, Petitioner's objection that he never waived counsel for the second indictment is without merit.  Petitioner argues that the waiver of his right to counsel was "offense

specific," citing *Texas v. Cobb*, 532 U.S. 162, 162 (2001).  However, Petitioner appears to

misunderstand the holding of *Cobb*; in that case, the Supreme Court held that the Sixth

Amendment *right to counsel* was offense specific and that a defendant who was charged with a

crime and represented by counsel for that crime could still speak to police without counsel

present about uncharged criminal conduct.  *See Cobb*, 532 U.S. at 168–169.  Here, Petitioner

alleges that his *waiver* of his right to counsel was offense specific; *Cobb* does not provide

support for that argument.  A defendant's decision to proceed pro se is not made with respect to

each specific offense or indictment, rather it is made with respect to the case as a whole.[10]  Once

Petitioner decided to proceed pro se, he bore responsibility for responding to any new

indictments or other developments in his case and, if he felt that he was not prepared to do so, he

was also responsible for raising those concerns to the court and seeking to have counsel

appointed for him.[11]

---

[10] The Court has been unable to locate any precedent taking this position, but it appears to be a necessary corollary of a criminal defendant's fundamental right to proceed pro se; this right would be diminished and potentially meaningless if a defendant's decision had to be constantly questioned and reaffirmed each time the government took action.  As the Second Circuit has commented, "[a] defendant's choice to represent himself '*must be honored*,' 'although he may conduct his own defense ultimately to his own detriment.'"  *Garrett*, 42 F.4th at 120 (2d Cir. 2022) (quoting *Faretta*, 422 U.S. at 834) (emphasis added).

[11] The Court notes that while Petitioner was technically proceeding pro se, the County Court did appoint Mr. Gotkin as a legal advisor; during jury selection, at trial, and for sentencing, Mr. Gotkin or another public defender were available to assist Petitioner.  (*See* Dkt. 17-1 at 232, 332; Dkt. No. 17-2 at 116, 223; Dkt. 17-3 at 2, 137; Dkt. 17-4 at 2, 129, 293.)

Petitioner also objects that his waiver of his right to counsel for the second indictment was ineffective because seven months elapsed between the first and second indictments. (Second Obj's 10.)  However, it is unclear to the Court why this gap is relevant to whether Petitioner's waiver of his right to counsel was effective.  Petitioner knowingly and intelligently waived his right to counsel, and from that moment forward, he was responsible for his own defense and seems to have conducted it with considerable vigor, even though perhaps also "ultimately to his own detriment."  *Garrett*, 42 F.4th at 120 (quoting *Faretta*, 422 U.S. at 834). The Court notes that during the period that Petitioner highlights, Petitioner filed a number of pro

Petitioner is thus not entitled to habeas relief on his right to counsel claim, and Judge Davison's recommendation on this point is adopted.

### III.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise.  The Court therefore adopts the outcome of Judge Davison's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the court certifies in writing that it was not taken in good faith).

---

se motions and letters to the County Court actively contesting his case.  (*See, e.g.,* Dkt. 16-2 at 46–54; Dkt. 16-4 at 16–22.)  After the second indictment was consolidated with the first, Petitioner continued to actively litigate, including by filing a pro se complaint against the County Court with the New York State Commission on Judicial Conduct.  (*See* Dkt. 16-3 at 111.) Nothing about the charge in the second indictment or Petitioner's conduct suggests that the County Court needed to reaffirm Petitioner's decision to proceed pro se.  Thus, this objection is also without merit.

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and close the case.

SO ORDERED.

DATED:        October 11, 2022
              White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE